IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| KENNETH JOE MCDOWELL, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | 1:20CV1003 |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Kenneth Joe McDowell brought this action to obtain review of a final decision of the Commissioner of Social Security[1] denying his claim for disability insurance benefits ("DIB"). The Court has before it the certified administrative record and cross-motions for judgment.

## I. PROCEDURAL HISTORY

In 2018, Plaintiff filed an application for DIB alleging a disability onset date of July 11, 2007. (Tr. 13, 151.)[2] The application was denied initially and again upon reconsideration. (Tr. 13, 66, 89.) Plaintiff amended his onset date to October 1, 2016 (Tr. 13, 171.) After an

---

[1] The President appointed Kilolo Kijakazi as the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted for Andrew M. Saul as Defendant in this suit.

[2] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 10.)

administrative hearing, the ALJ determined on January 9, 2020, that Plaintiff was not disabled under the Social Security Act. (Tr. 10-28.) On August 31, 2020, the Appeals Council denied Plaintiff's request for review making the ALJ's decision the final decision for purposes of review. (Tr. 1-6.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In reviewing for substantial evidence, the Court does not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court is not whether Plaintiff is disabled but whether the finding that she is not disabled is supported by substantial evidence and based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the well-established sequential analysis to ascertain whether the claimant is disabled, which is set forth in 20 C.F.R. § 416.920.[3] *See Albright v. Comm'r of Soc.*

---

[3] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her [or his] past relevant work; and (5) if not, could perform any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.* at 473. "Through the fourth step, the burden of production and proof is on the claimant. If the claimant

2

*Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). First, the ALJ found that Plaintiff's date last insured ("DLI") was December 31, 2017. (Tr. 15.) At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity from July 11, 2007, through December 31, 2017, the initial alleged onset date through his DLI. (*Id.*) The ALJ next found the following severe impairments at step two: diabetes mellitus, coronary artery disease status post ST-elevation myocardial infarction, and hypertension. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1. (Tr. 18-19.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that he could perform medium work, with the following additional limitations:

> occasionally climb ladders, ropes and scaffolds; can frequently climb ramps and stairs and balance; and should avoid concentrated exposure to unprotected heights.

(Tr. 19.) At the fourth step, the ALJ determined that Plaintiff was unable to perform his past relevant work. (Tr. 22.) At step five, the ALJ determined that there were other jobs in the national economy that Plaintiff could perform. (Tr. 23-24.)

## IV. ISSUES AND ANALYSIS

Plaintiff raises three objections to the ALJ's decision. Specifically, he contends that "[t]he ALJ [i]mproperly [f]ailed to [c]onsider [Plaintiff's] Peduncular Ischemia (Stroke) and its

---

reaches step five, the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." *Hunter*, 993 F.2d at 35 (internal citations omitted).

[d]isabling [e]ffects, [i]ncluding [n]eurocognitive [d]isorder." (Docket Entry 14 at 4.) Plaintiff further contends that "[t]he ALJ [e]rred in [r]ejecting the [c]onsultative [p]sychiatrist's [o]pinion." (*Id.* at 8.) Finally, Plaintiff contends that "[t]he ALJ [e]rred in [d]iscounting [Plaintiff's] [d]iabetes-[r]elated [s]ymptoms." (*Id.* at 10.) For the following reasons, none of these arguments warrants relief.

### a. The ALJ properly considered Plaintiff's stroke and its effects.

Plaintiff first claims that the ALJ did not consider Plaintiff's 2008 stroke and its disabling effects. (Docket Entry 14 at 4.) He argues that the ALJ "provided no rational for excluding the stroke and its effects from her evaluation." (*Id.*) For the reasons that follow, this argument is unpersuasive.

An ALJ is not required to consider alleged impairments not raised in the initial application for benefits. *See, e.g., Meyer v. Colvin,* 754 F.3d 251, 256-57 (4th Cir. 2014) (relying on *Halverson v. Astrue,* 600 F.2d 922, 934 (8th Cir. 2010) (An ALJ "is not obliged to investigate a claim not presented at the time of the [benefits] application . . . and not offered at the hearing as a basis for disability.")); *Leggett v. Chater,* 67 F.3d 558, 566 (5th Cir. 1995) ("The ALJ's duty to investigate ... does not extend to possible disabilities that are not alleged by the claimant or to those disabilities that are not clearly indicated on the record.").

Although Plaintiff did not claim that his stroke was disabling, he did raise it during his hearing before the ALJ, and the ALJ considered it and the symptoms that may have resulted from it. During the hearing, Plaintiff's attorney questioned Plaintiff specifically about the stroke he suffered at the same time he suffered his myocardial infarction in 2008. (Tr. 36.) Plaintiff then testified about the lingering symptoms that Plaintiff claims disrupted his work:

4

> Q    Okay. And you were having trouble keeping up with the work:
>
> A    Yeah, pretty much, it took me a little longer to catch up with—stay up to speed. . . .
>
> Q    And why was it taking you longer?
>
> A    I think that I had to think about it too long and keep it in this very structured way and just couldn't keep up with that.
>
> Q    Okay. So, you were having trouble focusing, concentrating, had that been going on since the stroke and got worse toward the end?
>
> A    Um-hum, yes, ma'am. . . .
>
> Q    Okay, and you were having trouble explaining that or even following the procedures yourself that you had done previously before?
>
> A    Yes. . . .
>
> Q    Okay. So, and what kind of physical problems were you having there at the end? Were you having any trouble lifting or walking or –
>
> A    With my balance, I have problems and also lifting on my left side. . . . It was more like [I] didn't have the strength even to grip and also my left leg was so weak, when I go to lift something, my knee will buckle.

(Tr. 38-40.) The ALJ heard this testimony and acknowledged it in her decision. (Tr. 20.)

Furthermore, the ALJ considered the stroke several times in her decision, noting that Plaintiff had it in 2008, but the "mild white matter changes in his brain . . . were stable, and no symptomology ha[d] been attributed to the changes prior to the date last insured." (Tr. 16.) She also addressed his cognitive difficulties and acknowledged that they caused "mild limitations" in "understanding, remembering, or applying information, . . . interacting with others, . . . the ability to concentrate, persist, or maintain pace, . . . [and the] ability to adapt or manage himself." (Tr. 17-18.) She concluded that these mild limitations did not amount to a severe impairment. (Tr. 18.)

In putting together Plaintiff's RFC, the ALJ stated that she had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 19.) Based on the references to both the stroke and its effects in the decision and a review of the record, it is clear that the ALJ considered Plaintiff's 2008 stroke and the symptoms it caused. *See Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007) ("The ALJ stated that he considered all of [the plaintiff's] symptoms in assessing her RFC. Our general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter. Furthermore, the ALJ's discussion of the evidence and his reasons for his conclusions demonstrate that he considered all of [the plaintiff]'s impairments." (internal citations, quotation marks, and brackets omitted)); *Browning v. Sullivan*, 958 F.2d 817, 821 (8th Cir. 1992) ("After separately discussing [the plaintiff's] physical impairments, affective disorder, and complaints of pain, as well as her daily level of activities, the ALJ found that her impairments d[id] not prevent [her] from performing her past relevant work. To require a more elaborate articulation of the ALJ's thought processes would not be reasonable." (internal quotation marks omitted)); *Gooch v. Secretary, Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987) ("[T]he fact that each element of the record was discussed individually hardly suggests that the totality of the record was not considered, particularly in view of the fact that the ALJ specifically referred to 'a combination of impairments' in deciding that [the plaintiff] did not meet the 'listings.' "); *Webb v. Kijakazi*, No. 1:20CV714, 2021 WL 5206498, at *6 (M.D.N.C. Nov. 9, 2021) (unpublished) (Auld, M.J.) (accepting ALJ's statement that "he had considered *all* symptoms and the extent to which these symptoms can reasonably be accepted as

6

consistent with the objective medical evidence and other evidence" and fact that ALJ discussed those symptoms as sufficient analysis), *recommendation adopted*, No. 1:20CV714, 2021 WL 5834407 (M.D.N.C. Dec. 9, 2021) (Biggs, J.); *Wilson-Coleman v. Colvin*, No. 1:11CV726, 2013 WL 6018780, at *3 (M.D.N.C. Nov. 12, 2013) (unpublished) (Webster, M.J.) (concluding that "sufficient consideration of the combined effects of a claimant's impairments is shown when each is separately discussed in the ALJ's decision, including discussion of a claimant's complaints of pain and level of daily activities" (internal brackets omitted)), *recommendation adopted*, slip op. (M.D.N.C. Dec. 6, 2013) (Schroeder, J.); *Jones v. Astrue*, No. 5:07CV452, 2009 WL 455414, at *15 (E.D.N.C. Feb. 23, 2009) (unpublished) (noting that ALJ's RFC assessment and summarization of medical records as to each impairment indicated ALJ "considered all of [the c]laimant's mental and physical limitations together"). Based on the entire record, including laboratory diagnostics and the fact that Plaintiff continued to drive prior to the DLI (Tr. 21), the ALJ's determination that the stroke and its effects produced no more than mild limitations to Plaintiff's ability to work is supported by substantial evidence. Plaintiff's arguments to the contrary are not persuasive.

### b. The ALJ adequately evaluated the opinion of the consulting psychiatrist.

Plaintiff next claims that the ALJ improperly rejected the opinion of consulting psychiatrist, Dr. Carola Duszlak, M.D. (Docket Entry 14 at 8.) He argues that the ALJ erred by "provid[ing] no meaningful explanation of the rejection of Dr. Duszlak's opinion." (*Id.* at 9.) Citing evidence in the record that Plaintiff had the symptoms Dr. Duszlak evaluated before his DLI, Plaintiff avers that the ALJ erred in concluding that the opinion was not consistent with the record because the examination occurred sixteen months after Plaintiff's DLI. (*Id.* at

7

9-10.)

The longstanding requirements calling for adjudicators to weigh medical opinions and give special deference to treating-source opinions have changed. *See* 20 C.F.R. § 416.920c(a) (effective March 27, 2017). Now, adjudicators "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources."[4] *Id.* Nevertheless, an ALJ must consider and articulate in the administrative decision how persuasive he or she finds each medical opinion or prior medical finding in a claimant's case record. *See id.* § 416.920c(b). When a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings as a class. *See id.* § 416.920c(b)(1). In doing so, the ALJ is "not required to articulate how [she] considered each medical opinion or prior administrative medical finding from one medical source individually." *Id.*

In evaluating persuasiveness, the ALJ must articulate two factors: supportability and consistency. *Id.* § 416.920c(b)(2). Supportability is an internal check that references objective medical evidence and supporting explanations that come from the source itself. *Id.* § 416.920c(c)(1); *Revisions to Rules*, 82 Fed. Reg. at 5853. Consistency is an external check that references evidence from other medical and nonmedical sources. *Id.* § 416.920c(c)(2); *Revisions*

---

[4] The new regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. § 416.913(a)(2) (2017). The new regulations also define a "finding . . . about a medical issue made by . . . Federal and State agency medical and psychological consultants at a prior level of review" as a "[p]rior administrative medical finding." *Id.* § 416.913(a)(5).

8

*to Rules*, 82 Fed. Reg. at 5853. The ALJ must only address the three other persuasiveness factors—relationship with the claimant, specialization, and the catchall "other factors"—when two or more medical opinions, or prior administrative medical findings about the same issue, are equally persuasive in terms of supportability and consistency. *Id.* § 416.920c(b)(3), 416.920c(c)(3)-(5).

Furthermore, "[s]tatements that [claimants] are or are not disabled, . . . able to work, or able to perform regular or continuing work," are statements on an issue reserved to the Commissioner. 20 C.F.R. § 416.920b(c)(3). Under the revised regulations, statements on issues reserved to the Commissioner are deemed evidence that "is inherently neither valuable nor persuasive to the issue of whether [a claimant is] disabled." 20 C.F.R. § 416.920b(c)(1)-(3). Additionally, the regulations make clear that, for such claims, "we will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 416.920b(c).

Dr. Duszlak examined Plaintiff on April 23, 2019 (Tr. 1800-06.) She did a general psychiatric assessment of Plaintiff in a single visit in which she assessed his medical history and gave him a mental status examination. (Tr. 1801-04.) She made a diagnosis of possible neurocognitive disorder with anxiety and depression but could not confirm the former because she had no documentation of radiographic studies that showed evidence of his stroke. (Tr. 1804.) Dr. Duszlak concluded that Plaintiff could do simple and repetitive tasks, interact with co-workers and the public, had poor stress tolerance, and would likely be slow to do tasks at work. (Tr. 1805.)

The ALJ assessed Dr. Duszlak's opinion as follows:

9

> [t]he undersigned was also not persuaded by the opinion of Dr. Carola Duszlak, M.D., a consultative examiner. Dr. Duszlak opined that the claimant could do simple, repetitive tasks, and could accept instructions from supervisors. The opinion was supported by an in person examination, however the examination was not consistent with the medical record as it was conducted over a year after the claimant's date last insured.

(Tr. 22 (internal citations omitted).)

The ALJ made no legal error in her evaluation of Dr. Duszlak's opinion, and her treatment of it is supported by substantial evidence. First, the ALJ noted that that the opinion was supportable because Dr. Duszlak made an in-person mental status examination of the Plaintiff. She concluded, however, that Dr. Duszlak conducted this exam well after Plaintiff's DLI. An ALJ is only required to consider medical opinion evidence gathered after the DLI if it addresses symptoms suffered before the DLI and if it is retrospective in nature. *See Cox v. Berryhill*, 2019 WL1371461 at *12 (D.S.C. Jan. 2, 2019) (unpublished) ("Although medical opinions from after the date last insured may sometimes be probative to a disability determination, these medical opinions must relate back to the relevant period and offer a retrospective opinion on the past extent of an impairment.") (citing *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 341 (4th Cir. 2012); *Wooldridge v. Bowen*, 816 F.2d 157, 160 (4th Cir. 1987)). Although Dr. Duszlak took a limited medical history of Plaintiff, she could only evaluate his mental status as of the date of the exam, and she admitted that her diagnosis of "possible vascular neurocognitive disorder" was only a "possible" diagnosis because she had no radiographic documentation of Plaintiff's stroke. (Tr. 1804.) She did not offer a retrospective opinion on the past extent of Plaintiff's symptoms.

Plaintiff's arguments to the contrary are not persuasive. Plaintiff is correct that there

10

is some evidence in the record that Plaintiff had been suffering from cognitive difficulties during the applicable time period before his DLI. Neurologist Dr. Michael Pietak, M.D., took a medical history on October 26, 2016, in which he noted that Plaintiff's wife described "some left[-]sided weakness." (Tr. 657.) Plaintiff and his wife detailed other symptoms:

> They have also noted that it is difficult for him to complete his thoughts or talk. They also not short[-]term memory loss. He will forget to respond or forget what they were talking about. Over the course of the last few years, they fell as though this has declined.

(*Id.*) In Dr. Pietak's exam, however, Plaintiff was oriented to person, place, time, and purpose; had normal fluency and comprehension of language, as well as normal naming and repetition; had adequate recent and remote memory; had unremarkable attention and concentration results; and had an appropriate fund of knowledge and appropriate affect and behavior. (Tr. 661.) Nonetheless, Dr. Pietak ordered an MRI and a sleep-deprived EEG. (Tr. 663.) The results from these tests showed "[n]o acute infarct," "[n]o restricted diffusion," "[n]o evidence of acute hemorrhage," and a normal EEG. (Tr. 664-65.) Subsequent medical examinations prior to the DLI showed that Plaintiff was "alert and oriented" and that his "thought process and behavior [was] organized." (Tr. 669; *see* Tr. 674, 682, 684, 692, 699, 700, 705, 717, 728.) He does not appear to have been treated for these cognitive symptoms during the period in question.

Given the above-noted lack of persistent symptoms, substantial evidence supports the ALJ's conclusion that Dr. Duszlak's opinion was not consistent with the medical record of the time at issue. Furthermore, as Plaintiff has pointed out (*see* Docket Entry 14 at 9), his cognitive symptoms appear to be progressive in nature. There is not sufficient evidence to

11

support the argument that Dr. Duszlak's opinion regarding Plaintiff's work limitations would have been the same had she examined him prior to the DLI.

### c. The ALJ adequately evaluated Plaintiff's diabetes-related symptoms.

Plaintiff finally asserts that the ALJ did not "provide a narrative discussion that creates an accurate and logical bridge from the evidence to her conclusions" when determining that Plaintiff's diabetes-related symptoms did not limit his ability to perform medium work. (Docket Entry 14 at 11.) As explained below, this argument is unpersuasive.

Under the applicable regulations, the ALJ's decision must "contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." Social Security Ruling 16-3p, 2017 WL 5180304, at *10; *see also* 20 C.F.R. § 404.1529. In *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996), the Fourth Circuit addressed the two-part test for evaluating a claimant's statements about symptoms: "First, there must be objective medical evidence showing "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." *Craig*, 76 F.3d at 594 (emphasis omitted) (quoting 20 C.F.R. §§ 416.929(b), 404.1529(b)). If such an impairment exists, the second part of the test then requires the ALJ to consider all available evidence, including a claimant's statements about pain in order to evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [the claimant's] ability to work." *Id.* at 595.

This approach facilitates the ALJ's goal, which is to determine the extent to which a

12

claimant's pain or other symptoms limit the ability to perform basic work activities. Relevant evidence for this inquiry includes a claimant's "medical history, medical signs, and laboratory findings," *id.* at 595, as well as the following factors set out in 20 C.F.R. § 404.1529(c)(3):

(i) [Claimant's] daily activities;

(ii) The location, duration, frequency, and intensity of [claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv) The type, dosage, effectiveness, and side effects of any medication [claimant] take[s] or [has] taken to alleviate [his or her] pain or other symptoms;

(v) Treatment, other than medication, [claimant] receive[s] or [has] received for relief of [his or her] pain or other symptoms;

(vi) Any measures [claimant] use[s] or [has] used to relieve [his or her] pain or other symptoms (e.g., lying flat on [his or her] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [claimant's] functional limitations and restrictions due to pain or other symptoms.

Where the ALJ has considered these factors and has heard a claimant's testimony and observed his or her demeanor, the ALJ's determination is entitled to deference. *See Shively v. Heckler* 739 F.2d 987, 989 (4th Cir. 1984).

In the present case, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [those] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 20.) Plaintiff's challenge, therefore, depends upon step two of the *Craig* analysis.

It is undisputed that at step two of the analysis, the ALJ should not reject a claimant's

13

statements "about the intensity and persistence of [his or her] pain or other symptoms or about the effect [the] symptoms have on [his or her] ability to work solely because the available objective medical evidence does not substantiate [his or her] statements." 20 C.F.R. § 404.1529(c)(2). Thus, "subjective evidence of pain intensity cannot be discounted solely based on the objective medical findings." *Lewis v. Berryhill*, 858 F.3f 858, 866 (4th Cir. 2017). It is also undisputed, however, that a plaintiff's "symptoms, including pain will be determined to diminish [his or her] capacity for basic work activities [only] to the extent that [her] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(c)(4). Objective medical evidence and other evidence in the record are therefore "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his or her] ability to work." *Hines v. Barnhart*, 453 F.3d 559, 565 n.3 (4th Cir. 2006). Indeed,

> Although a claimant's allegations about . . . pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges [he or] she suffers.

*Id.* (citing *Craig*, 76 F.3d at 595). According to the regulatory guidance:

> If an individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and the other evidence of record, we will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related activities. . . . In contrast, if an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, we will determine that the individual's

14

symptoms are less likely to reduce his or her capacities to perform work-related activities.

SSR, 16-3p, 2017 WL 5180304, at *8.

In the present case, a thorough review of the ALJ's decision and the record as a whole reveals that the ALJ properly considered objective medical evidence, as well as other evidence, and explained that determination in the decision. In evaluating the evidence, the ALJ specifically identified multiple reasons supporting her determination that Plaintiff's diabetes-related symptoms did not create more limitations for the Plaintiff.

Foremost, she included a limitation specific to Plaintiff's symptoms of peripheral neuropathy in the RFC. The ALJ found the opinions of the State agency medical consultants, Dr. H. Blummenfield, M.D., and Dr. Henry Gallis, M.D., to be persuasive in their determinations that Plaintiff could perform medium work but should avoid unprotected heights because of his peripheral neuropathy, which affected his feet. (Tr. 22.) Because of this diabetic symptom, the ALJ included in the RFC that Plaintiff "should avoid concentrated exposure to unprotected heights" to remain "in accordance with the claimant's impairments." (Tr. 19, 22.)

Additionally, the ALJ made it clear that, while she acknowledged that Plaintiff's neuropathy limited him somewhat, the objective medical and other evidence did not support further restrictions. She noted that, despite this diabetic comorbidity and claims of loss of balance, Plaintiff repeatedly demonstrated stable and normal gait during examinations and tandem-walk tests. (Tr. 21; *see* Tr. 692, 705, 729.) He also repeatedly was noted to have 5/5 strength in his lower extremities. (*Id.*)

As for Plaintiff's other diabetic symptoms, the ALJ acknowledged that, although endocrinologists often described his diabetes as "uncontrolled, with his A1c readings routinely exceeding 6.5," he "was not documented as having health issues as a result." (Tr. 20.) The ALJ's conclusion is supported by substantial evidence in the record demonstrating that the Plaintiff regularly reported no diabetic retinopathy, no ulcerations, no pain, no shortness of breath, and no other diabetic complications besides neuropathy. (Tr. 669, 673, 682, 688-90, 701-02, 708, 712, 715, 717, 725.)

Finally, the ALJ reasoned that Plaintiff's reported symptoms were not consistent with the overall evidence because Plaintiff's activities did not support the level of limitation that he alleged. (Tr. 20.) Plaintiff worked throughout his diagnosis of diabetes. (*Id.*) In addition, he frequently forgot his logbook during endocrinology appointments, had inaccurate meter readings, and was regularly overdue for recommended eye examinations. (*Id.*) Substantial evidence supports this conclusion, as the record demonstrates that Plaintiff also did not check his blood sugar as often as required and frequently skipped or stopped taking his prescribed medications. (*See, e.g.,* Tr. at 1083, 2103, 2118, 2129, 2189.)

Plaintiff's argument to the contrary is unavailing. Plaintiff claims that the ALJ did not provide "an accurate and logical bridge from the evidence to her conclusions," regarding Plaintiff's diabetes and neuropathy symptoms. (Docket Entry 14 at 11 (citing *Monroe v. Colvin*, 826 F.3d 176 (4th Cir. 2016).) Plaintiff, however, is incorrect. In her discussion of Plaintiff's medical records as well as of the State consultant opinions, the ALJ acknowledged that Plaintiff suffered from diabetes-related neuropathy and specifically accounted for that symptom in the RFC, determining that Plaintiff "should avoid unprotected heights," where numbness and

tingling of the feet and loss of balance could create danger for the Plaintiff. (Tr. 22.) Because of Plaintiff's frequent findings of normal gait, normal tandem walk, normal lower-extremity strength, and mostly normal sensation tests, the ALJ chose not to restrict Plaintiff further. This conclusion was logical based upon the evidence, as explained above.

### V. CONCLUSION

After a careful consideration of the evidence of record, the Court finds that the Commissioner's decision is susceptible to judicial review, legally correct, and supported by substantial evidence. Accordingly, this Court **RECOMMENDS** that Plaintiff's Motion to Reverse the Decision of the Commissioner (Docket Entry 13) be **DENIED**, Defendant's Motion for Judgment (Docket Entry 15) be **GRANTED**, and the final decision of the Commissioner be upheld.

February 28, 2022

Joe L. Webster
United States Magistrate Judge